# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| FREDERICKSBURG ROYALTY, LTD., on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>HESS BAKKEN INVESTMENTS II, LLC,<br><br>        Defendant. | Civil Action No. 20-cv-04022 |

## ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiff Fredericksburg Royalty, Ltd. ("Plaintiff"), on behalf of itself and all others similarly situated, files this Complaint against Hess Bakken Investments II, LLC ("Hess" or "Defendant"). Plaintiff alleges and asserts the following against Defendant.

### SUMMARY

1. This class action concerns Hess's willful and ongoing violations of North Dakota law related to the payment of oil-and-gas royalties. Hess violates North Dakota royalty payment law in multiple ways.

2. For example, North Dakota statute requires operators like Hess to pay royalties to mineral owners, both leased and unleased, within 150 days of marketing the oil or gas. The statute further requires operators to pay mineral owners statutory interest when they fail to meet that deadline.

3.  Hess does not automatically pay mineral owners the interest it owes on untimely royalty payments. Instead, it has a policy of only paying statutory interest when mineral owners demand it, despite the fact that the statute expressly disclaims a demand requirement.

4.  Further, Hess violates the leases it entered into with royalty interest owners by "paying" negative royalty on natural gas or its constituent parts ("natural gas").

5.  As opposed to other sorts of interest owners (for example, working interest owners), royalty interest owners are not required to contribute to the upfront costs to drill or complete a well and they do not share in the downside (*i.e.*, the risk) of a well not being profitable. In short, royalty interest owners are only to be *paid* royalty on the proceeds of production and are never to be *charged* for the sale of oil or natural gas at a negative rate ("negative royalty").

6.  Despite this fundamental concept of a royalty interest, Hess wrongfully charges its royalty interest owners negative royalty on natural gas produced as a byproduct to oil in North Dakota.

7.  Further still, Hess unreasonably deducts post-production costs from the royalty payments of its royalty interest owners by deducting inflated costs tied to Hess's agreements with its affiliated midstream service providers.

## PARTIES

8.  Plaintiff Fredericksburg Royalty, Ltd. is a Texas limited partnership with its principal place of business in San Antonio, Texas.

9.  Defendant Hess Bakken Investments II, LLC is a Delaware limited liability company with its principal place of business located in Houston, Texas, and may be served

with process by serving its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION & VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. 1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000 and because members of the class and Defendant are citizens of different states.

11. This Court has personal jurisdiction over Hess because it maintains its principal place of business in this district and has minimum contacts in this district.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the of the events giving rise to the class claims occurred in Houston, Texas, which is located within this district.

## FACTUAL ALLEGATIONS – LATE PAYMENT

13. The preceding allegations are fully incorporated by reference.

14. North Dakota statute provides:

> **If the operator** under an oil and gas lease **fails to pay oil or gas royalties** to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed . . . or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner **within one hundred fifty days after oil or gas production is marketed** from the unleased mineral interest owner's mineral interest, **the operator thereafter shall pay interest** on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, **at the rate of eighteen percent per annum until paid** . . . .

N.D.C.C. § 47-16-39.1 (emphasis added).

15. Stated differently, when an operator like Hess fails to pay royalties to a mineral owner within 150 days after the oil or natural gas is sold, the operator owes 18% interest on the unpaid royalty.

16. The statute expressly states there is no demand requirement before a mineral owner is entitled to statutory interest. *See* N.D.C.C. § 47-16-39.1 ("without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest").

17. The statute equally applies the 18% interest obligation to late payments made to both leased and unleased mineral owners. *See id*.

18. Despite this clear statutory obligation, Hess does not automatically pay interest on untimely payments. Instead, Hess has adopted a policy of requiring mineral owners to first demand statutory interest before it will pay what is already owed under the statute.

19. Plaintiff owns an interest in oil and natural gas produced from several Hess-operated wells in North Dakota, including, among others, the Ferguson #32-22 well, the E Burdick #29-32H well, and the H Rud 24-25H well in Williams County.

20. Hess remits royalty payments to Plaintiff for its royalty interests in Hess-operated wells.

21. Hess failed to pay Plaintiff the royalties to which it is entitled within 150 days of marketing Plaintiff's mineral interests from multiple wells.

22. For example, for oil and natural gas Hess marketed as far back as December 2019, Plaintiff did not receive payment until July 25, 2020.

23. When Hess finally did pay those royalties owed to Plaintiff in July 2020, Hess did not include the 18% interest required by North Dakota statute.

## CLASS ACTION ALLEGATIONS – CLASS I (LATE PAYMENT)

24. The preceding allegations are fully incorporated by reference.

25. Plaintiff brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

26. Plaintiff brings this class action on behalf of the following class ("Class I"):

> All non-excluded persons or entities owning mineral interests in North Dakota wells who: (1) received untimely payments from Hess for royalties in North Dakota wells; and (2) whose payments did not include the 18% interest required by law.
>
> Excluded from Class I are: (1) Hess, its affiliates, predecessors, and employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota.

27. Upon information and belief, there are thousands of absent Class I members entitled to interest on late payments made by Hess.

28. Class I is so numerous that joinder of all members is impracticable.

29. The questions of fact and law common to Class I include:

   a. Whether Plaintiff and Class I own legal interests in the North Dakota acreages for which Hess has an obligation to pay oil-and-gas royalties;

   b. Whether, under North Dakota law, Hess owed interest to Plaintiff and Class I on any untimely payments;

   c. Whether Hess's failure to pay interest to Plaintiff and Class I on any untimely payments constitutes a violation of North Dakota statute; and

   d. Whether Hess is obligated to pay interest on future untimely payments.

30. Plaintiff's claims are typical of Class I because each Class I member's claims are identical.

31. Hess treated Plaintiff and Class I in the same way by failing to pay the required interest on untimely payments.

32. Plaintiff will fairly and adequately protect the interests of Class I. Plaintiff is represented by counsel who are skilled and experienced in oil-and-gas matters, accounting, and complex civil litigation, including oil-and-gas class actions.

33. The factual allegations and questions of law in this Complaint are common to the members of Class I and predominate over any questions affecting only individual members.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

   a. The questions of law and fact are so numerous across Class I that there is no reason why individual members of Class I would want to control the prosecution of their own claims at their own expense;

   b. To Plaintiff's knowledge, there is no pending litigation by any individual Class I member with the same scope of the Class I membership sought in this Complaint against Defendant relating to its failure to pay interest owed on the untimely payment of oil-and-gas royalties as required by North Dakota law;

   c. All parties and the judiciary have a strong interest in resolving these matters in one forum without the need for multiple actions;

   d. The difficulties in managing this case as a class action will be slight in relation to the personal benefits to be achieved on behalf of each and every Class I member—not only those who can afford to bring their own actions; and

   e. Absent a class action, Plaintiff and the Class I members may never fully discover the wrongful acts of Hess, the extent of their respective financial losses, or the financial benefit they are unwittingly providing to Hess.

## CAUSE OF ACTION – CLASS I (LATE PAYMENT)
### Breach of Statutory Obligation to Pay Interest

35. The preceding allegations are incorporated by reference.

36. Plaintiff brings this cause of action on behalf of itself and Class I.

37. Plaintiff and Class I were legally entitled to the payment of oil-and-gas royalties from Hess for production from wells owned or operated in North Dakota.

38. N.D.C.C. § 47-16-39.1 requires XTO to pay owners within 150 days after marketing the oil or natural gas produced.

39. When Hess fails to pay owners within the statutory time period, N.D.C.C. § 47-16-39.1 requires XTO to pay owners 18% interest when the payment is eventually made.

40. Hess held oil-and-gas royalties belonging to Plaintiff and Class I, and Hess failed to timely pay these royalties to Plaintiff and Class I.

41. When Hess eventually paid these royalties to Plaintiff and Class I, it did not pay the interest required by N.D.C.C. § 47-16-39.1.

42. Hess's failure to pay interest owed on the untimely payments has harmed Plaintiff and Class I.

## FACTUAL ALLEGATIONS – NEGATIVE ROYALTY

43. The preceding allegations are incorporated by reference.

44. Under an oil-and-gas lease, the producer (the lessee) leases the right of oil-and-gas exploration and production from the owner of those minerals (the lessor). And, in exchange for that right, the mineral owner typically retains a royalty interest on the proceeds from the oil-and-gas production.

45. For example, the royalty interests Plaintiff owns in Hess-operated wells stem from a lease with the following clause on natural gas royalty:

7

> In consideration of the premises the said lessee covenants and agrees . . . To **pay** lessor for gas of whatsoever nature or kind produced and sold, or used off the premises, or used in the manufacture of any products therefrom, one-eighth, at the market price at the well for the gas . . .

(emphasis added).

46. In certain oil-and-gas formations—such as the Bakken in North Dakota—production typically generates oil and natural gas in the same production stream.

47. Put differently, in order to produce oil from wells in the Bakken, Hess must also produce the natural gas that comes with it.

48. But the markets for oil and natural gas don't always align, and instances arise in which Hess produces low-priced natural gas in order to produce and market the higher-priced oil, which is the actual value driver for the well. In those instances, the natural gas is merely a byproduct to the oil production.

49. Those instances can create negative-royalty scenarios when operators, like Hess, deduct post-production costs (that is, the midstream service costs allegedly necessary to reach the market for natural gas) from a royalty owner's already low gross value.

50. Hess has charged negative royalty to Plaintiff for natural gas produced from the wells in which Plaintiff owns royalty interests, which also improperly reduced Plaintiff's associated oil royalties.

51. By imposing negative royalty, Hess has charged Plaintiff for something it does not owe. Quite to the contrary, Plaintiff—as lessor and a royalty interest owner—is only to be *paid* its proportionate share of the *proceeds* of natural gas production.

52. Plaintiff's lease makes this clear by expressly stating that Hess, as lessee, is obligated to **pay** Plaintiff for natural gas produced or used—not to charge it for that production. *See supra* at ¶ 45.

53. To the extent Hess produces natural gas as a byproduct of its oil production and that natural gas isn't profitable (i.e., a production cost for oil), Hess must shoulder that cost and it cannot pass that cost onto royalty interest owners like Plaintiff.

## CLASS ACTION ALLEGATIONS – CLASS II (NEGATIVE ROYALTY)

54. The preceding allegations are fully incorporated by reference.

55. Plaintiff brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

56. Plaintiff brings this class action on behalf of the following class ("Class II"):

> All non-excluded persons or entities owning royalty mineral interests under leases in North Dakota wells owned or operated by Hess who received negative royalty payments for the production of natural gas and its constituents.
>
> Excluded from Class II are: (1) Hess, its affiliates, predecessors, and employees, officers, and directors; and (2) agencies, departments, or instrumentalities of the United States of America or the State of North Dakota.

57. Upon information and belief, there are thousands of absent Class II members who have been charged negative royalties by Hess.

58. Class II is so numerous that joinder of all members is impracticable.

59. The questions of fact and law common to Class II include:

> e. Whether Plaintiff and Class II own legal interests in the North Dakota acreages for which Hess has an obligation to pay oil-and-gas royalties;

  f. Whether Hess's imposition of negative royalty for the production of natural gas and its constituents on Plaintiff and Class II constitutes a violation of the lease language; and

  g. Whether Hess is precluded from imposing negative royalty going forward.

60. Plaintiff's claims are typical of Class II because each Class II member's leases contain language precluding negative royalty on the production of natural gas and its constituents.

61. Hess treated Plaintiff and Class II in the same way by imposing negative royalty on the production of natural gas.

62. Plaintiff will fairly and adequately protect the interests of Class II. Plaintiff is represented by counsel who are skilled and experienced in oil-and-gas matters, accounting, and complex civil litigation, including oil-and-gas class actions.

63. The factual allegations and questions of law in this Complaint are common to the members of Class II and predominate over any questions affecting only individual members.

64. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

  a. The questions of law and fact are so numerous across Class II that there is no reason why individual members of Class II would want to control the prosecution of their own claims at their own expense;

  b. To Plaintiff's knowledge, there is no pending litigation by any individual Class II member with the same scope of the Class II membership sought in this Complaint against Defendant relating to negative royalties;

  c. All parties and the judiciary have a strong interest in resolving these matters in one forum without the need for multiple actions;

    d. The difficulties in managing this case as a class action will be slight in relation to the personal benefits to be achieved on behalf of each and every Class II member—not only those who can afford to bring their own actions; and

    e. Absent a class action, Plaintiff and the Class II members may never fully discover the wrongful acts of Hess, the extent of their respective financial losses, or the financial benefit they are unwittingly providing to Hess.

## CAUSE OF ACTION – CLASS II (NEGATIVE ROYALTY)
### Breach of Lease

65. The preceding allegations are incorporated by reference.

66. Plaintiff brings this cause of action on behalf of itself and Class II.

67. Plaintiff and Class II were legally entitled to the payments of royalties on natural gas produced by wells owned or operated by Hess in North Dakota.

68. The leases entitling Plaintiff and Class II to royalty payments preclude the imposition of negative royalty on the production of natural gas.

69. Instead, under the leases entitling Plaintiff and Class II to royalty payments, Plaintiff and Class II are only to be *paid*—not charged—for the production of natural gas.

70. Hess nonetheless charged Plaintiff and Class II for the production of natural gas by selling that natural gas at low rates and then deducting post-production costs from Plaintiff and Class II's royalty interests such that it resulted in a negative amount, thus improperly reducing Plaintiff's associated oil royalties.

71. Hess's negative-royalty practices constitutes a breach of Plaintiff and Class II's leases under which they are entitled to royalty payments from Hess.

72. Plaintiff and Class II are further entitled to statutory interest under N.D.C.C. § 47-16-39.1 for their underpaid oil royalties as a result of the negative royalties charged in breach of their leases.

## JURY DEMAND – BOTH CLASSES

73. Under Fed. R. Civ. P. 38, Plaintiff requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff seeks:

1. An order certifying and allowing this case to proceed as a class action, for both Class I and Class II, with Plaintiff as class representative and the undersigned counsel as class counsel;

2. An order requiring Hess to pay Plaintiff and the members of Class I and Class II actual damages to fully compensate them for losses sustained as a direct, proximate, and producing cause of Hess's breaches and unlawful conduct, including, without limitation, the interest on the untimely payments required by law and the negative royalty amounts improperly charged against royalty interests;

3. An order requiring Hess to pay interest in the future, as required by law, to Plaintiff and Class I;

4. An order requiring Hess to cease its negative-royalty practices as to Plaintiff and Class II;

5. An order requiring Hess to pay the Classes' attorney fees and litigation costs as provided by statute; and

6. Such costs and other relief as this Court deems appropriate.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, Texas Bar No. 24050386
Attorney in Charge
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 fax
reagan@bradwil.com
ryan@bradwil.com

–and–

John Paul Albert,
ND Bar #08282 & OBA #31933
Brady L. Smith, OBA #30727
NEEDHAM & ASSOCIATES, PLLC
410 N. Walnut Avenue, Suite 110
Oklahoma City, OK 73104
(405) 297-0176
(405) 297-0173 fax
jpalbert@theneedhamcompanies.com
brady@theneedhamcompanies.com

**COUNSEL FOR PLAINTIFF**
